JgPETTIGREW, J.
This is an appeal from a judgment dismissing an employee’s claim for workers’ compensation benefits. For the reasons that follow, we hereby affirm.
FACTS
Claimant, Aaron Patrick Bell, Sr., had been an employee of AOA Services since April 14, 2001, when he claimed to have been injured on June 14, 2001. Mr. Bell alleged that after picking up a load of coke residue at the Shell Oil facility in Norco for his employer, he was returning to Grammercy on Airline Highway with the intention of traveling the remainder of the journey along the River Road. Mr. Bell claimed that as he approached River Road, he was traveling about 35 or 40 miles-per-hour. About two or three hundred feet before the stop sign at River Road, Mr. Bell stated that he first applied his brakes, but noticed that the brakes would not “hold” and were not properly slowing the truck. As his truck was fully loaded, Mr. Bell stated that he was forced to choose between either attempting a right turn *612 without brakes, or driving straight into the levee.
Mr. Bell testified that “there was no traffic coming that way anyway, so I tried to make the turn without harming anything and that’s when the truck rolled over.” In response to direct questioning by his attorney, Mr. Bell admitted that both the truck and cab rolled over.[1] In connection with this incident, Mr. Bell received a citation from the State Police for operation of an unsafe vehicle.
Following the accident, Mr. Bell helped Mr. Ricky Roussel, owner of AOA Services, shovel the coke material out of the truck so that the wrecker could thereafter turn the truck upright. Mr. Bell estimated that this work may have taken several hours. Mr. Bell testified that at the request of Mr. Roussel, he drove the truck back to the yard in Grammercy, a distance of approximately 40 miles.
The following day, which was Friday, Mr. Bell stated that he went “to talk” with Mr. Roussel who gave him his check and told him that he did not have anything else for him |3to do. Mr. Bell testified that he began to experience pain in his mid to lower back that day, and accompanied his wife to the emergency room at Prevost Memorial Hospital on the evening of Saturday, June 16, 2001. Emergency room records from Prevost Memorial reflect that Mr. Bell was diagnosed with “muscu-loskeletal pain” and given 50 mg. of Vioxx to be taken once daily for pain, and Cele-brex, a muscle relaxer. Mr. Bell was further advised to follow-up with his family physician, Dr. Jon A. Savoie, within seven days, and to refrain from work for two days. Mr. Bell conceded at trial that he never contacted Mr. Roussel prior to going to the hospital. Mr. Bell claimed that he called Mr. Roussel on Monday and tried to explain that he had gone to the doctor because his back was hurting; however, Mr. Roussel purportedly would not speak to him and “the phone hung up for some reason.” Mr. Bell testified that subsequent attempts to reach Mr. Roussel on his cellular phone proved unsuccessful.
Mr. Roussel testified that in the two months that Mr. Bell worked for him, this was the second time Mr. Bell turned his trailer over. Following this accident, Mr. Roussel agreed that Mr. Bell had helped him to shovel material out of the truck in order that the wrecker could turn the trailer back on its wheels.[2] According to Mr. Roussel, Mr. Bell called him about a week after the accident, but he advised Mr. Bell that the truck was still not repaired. Mr. Roussel admitted that Mr. Bell contacted him several weeks later about wanting to see a doctor, and he purportedly told Mr. Bell “to let [him] know.” Mr. Roussel stated that he did not know Mr. Bell had medical bills or a doctor until he received a letter from Mr. Bell’s attorney. Mr. Bell filed a Disputed Claim For Compensation on July 2, 2001, and claimed that no wage benefits had been paid, and no medical treatment had been authorized.
Although Mr. Bell testified that he saw Dr. Savoie on Monday June 19, 2001, and a second time two weeks later, medical records obtained from Dr. Savoie, and introduced as Plaintiffs Exhibit 1, indicate that Mr. Bell did not see Dr. Savoie until August 24, 2001, |4and again on September *613 10, 2001. Dr. Savoie’s medical record from Mr. Bell’s August 24, 2001 visit indicates that Mr. Bell expressed complaints of “severe pain to his lower back & middle of back.” Dr. Savoie’s record of that visit reveals a diagnosis of a “back strain” and an x-ray examination was ordered.
An x-ray report from Prevost Memorial Hospital dated August 24, 2001, noted that exams of Mr. Bell’s thoracic and lumbar spine revealed that the vertebral bodies were “normal in height and alignment” and that the “disc spaces were preserved.” Medical records from Mr. Bell’s September 10, 2001 visit indicate that on that date Mr. Bell sought to “revaluate [sic] back had pain 2 weeks ago states feeling a little better.” Despite a further notation regarding the absence of muscle spasm, Dr. Savoie noted that Mr. Bell “needs to see orthopedic sp. for back is still sore.” On that date, Dr. Savoie referred Mr. Bell to Dr. W. Joseph Laughlin, Jr., a Baton Rouge orthopedist. At trial, Mr. Bell testified that Dr. Savoie directed Mr. Bell to refrain from work. Mr. Bell also testified that as he did not have the money to pay for his visits to Dr. Savoie, his treatments were paid through his wife’s insurer.
Following a referral by Dr. Savoie, Mr. Bell sought treatment from Dr. Laughlin on September 13, 2001. Mr. Bell stated that Dr. Laughlin prescribed additional pain medication and Celebrex and advised him to remain off of work. Mr. Bell stated that Dr. Laughlin also prescribed that he undergo physical therapy, but was unable to get approval for physical therapy from either workers’ compensation or his wife’s insurer. During this time Mr. Bell testified that he remained at home taking care of his son.
Medical records reveal that Mr. Bell returned to Dr. Laughlin on December 13, 2001, with complaints of mid to lower back pain and sleeplessness. Mr. Bell admitted that this visit was approved by workers’ compensation. A medical report from Dr. Laughlin on that date revealed that despite Mr. Bell’s inability to attend physical therapy, Mr. Bell reported “slight improvement” in his overall symptoms, Physical evaluation revealed no pain with direct palpation and no complaints of any particular spasm. Dr. Laughlin purportedly advised that Mr. Bell continue taking the prescribed medication, refrain from work, and attend physical therapy. Mr. Bell admitted that workers’ compensation ^thereafter approved nine visits to physical therapy. Treatment records from Ascension Physical Therapy revealed that on December 17, 2001, Mr. Bell initially rated his pain as a level “10”; however, following seven visits with moist heat applications and an exercise regimen, this pain was reduced by January 9, 2002, to a level “3”.
During the course of his physical therapy, Mr. Bell testified that he saw Dr. Laughlin two more times. Mr. Bell admitted that his medical records confirm that Dr. Laughlin subsequently released Mr. Bell to return to work without restrictions on January 20, 2002.
In his testimony at the trial on March 27, 2002, Mr. Bell stated that he had been employed as a truck driver for Magnolia Distribution of Port Allen, Louisiana, for the past two weeks. Mr. Bell further testified that he was not currently experiencing any complaints with his back, and added that if he continued to take his medication and continually and actively stretched his muscles, he “should be fine.”
ACTION OF THE TRIAL COURT
Mediation conferences were scheduled in this matter on September 6, 2001, and again on November 1, 2001. On both occasions, defendants failed to appear. Through a motion filed December 3, 2001, Mr. Bell sought sanctions, penalties and *614 attorneys fees based upon defendants’ failure to appear. Following a hearing on December 21, 2001, the workers’ compensation court awarded $200.00 to Mr. Bell as attorneys fees as a result of defendants’ failure to appear.
This matter was set for trial on March 27, 2002, before Workers’ Compensation Judge Anthony Palermo in Baton Rouge, Louisiana. The workers’ compensation judge, after hearing testimony from the claimant, Mr. Bell, his employer, Mr. Roussel, and the claims representative from Workers’ Compensation Corporation, Ms. Deshazer, concluded that the testimony of Mr. Bell had been less than credible particularly with regard to the events surrounding the accident, his injuries, and the reporting of the accident.
The workers’ compensation judge found that Mr. Bell had proved by a preponderance of the evidence that an accident occurred in the course and scope of employment, however, the workers’ compensation judge further held that Mr. Bell failed |fito prove that an injury was sustained in said accident. Based upon this finding the workers’ compensation judge concluded that no medical or indemnity benefits were owed. With regard to Mr. Bell’s claim for penalties and attorneys fees, the judge found that “the record is rife with evidence casting doubt on Mr. Bell’s version of events and on whether he was even injured or not.” Accordingly, the workers’ compensation judge denied Mr. Bell’s claim based upon an arbitrary and capricious denial of benefits. A timely appeal was filed by Mr. Bell to this court.
ISSUES PRESENTED FOR REVIEW
In connection with his appeal in this matter, Mr. Bell has presented the following issues for disposition by this court:
1) Did the trial court err in finding that the plaintiff-appellant, Aaron Bell, failed to prove an injury was sustained in the accident?
2) Should the manifest error rule apply to Aaron Bell showing that the trial court was clearly wrong?
STANDARD OF REVIEW
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the findings of the workers’ compensation judge unless we determine that there is no reasonable basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder’s decision to credit a witness’s testimony must be given “great deference” by the appellate court. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable | inferences of fact should not be disturbed upon review, although the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
DISCUSSION
A claimant in a workers’ compensation case has the burden of establishing the occurrence of an accident and the causal relationship between the accident and the resulting disability by a preponderance *615 of the evidence. Augustus v. St. Mary Parish School Board, 95-2498, p. 3 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1149. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Id.
In determining whether the claimant has discharged his burden of proof, the trier of fact should accept as true a witness’s uncontradicted testimony, even though the witness is a party, absent circumstances casting suspicion on the reliability of that testimony. Augustus, 95-2498 at 4, 676 So.2d at 1149. A workers’ compensation judge’s determinations as to whether the claimant’s testimony is credible and whether the claimant has discharged his burden of proof are factual determinations which will not be disturbed upon review in the absence of manifest error or unless clearly wrong. Id.
In his oral reasons for judgment, the workers’ compensation judge stated:
The claimant alleged that he was injured in a one vehicle accident when the truck that he was driving overturned. The testimony of Aaron Bell, Sr. and Richard Roussel establishes by a preponderance of the evidence that an accident occurred in the course and scope of employment.
The major issue in this case is whether that accident resulted in an injury. Because of the severe credibility problems that Mr. Bell has and the testimony that was given by Mr. Roussel, I don’t think that an injury occurred in this case. The testimony was that the accident occurred, but Mr. Bell himself testified that after the accident he helped with removal of the load from the truck and then he drove the truck back to the employer’s place of business.
There was conflicting testimony regarding notification of the injury, there was conflicting testimony about when Mr. Bell first saw the doctor, whether he reported the injury, what he reported and what exactly that injury was. Quite frankly, I find Mr. Bell to be less than credible, especially regarding his testimony about the brakes going out and how the truck turned over, the position that it was found in and what his injuries were and what he did after the accident as far as reporting it, whether he was requesting his job back, all of these factors go into my decision, because of his lack of credibility and really the lack of objective evidence, medical | ^evidence, that an injury occurred, I find that no injury occurred and, therefore, no medical benefits or indemnity benefits are owed.
Based upon our review of the record and the implicit findings of the workers’ compensation judge regarding these issues, we find no error in the denial of temporary total benefits for the time period in dispute. Thus, the issues put forth by Mr. Bell are without merit.
CONCLUSION
For the foregoing reasons, the judgment of the workers’ compensation judge is affirmed in all respects. All costs associated with this appeal are assessed against plaintiff-appellant, Aaron Bell, Sr.
AFFIRMED.

. This fact was subsequently disputed by Mr. Roussel who testified that "the trailer of my number two truck was turned over and the truck itself was cocked to the left side just a little bit.”

. Mr. Roussel testified that following Mr. Bell’s accident on June 14, 2001, he had the brakes checked on the truck Mr. Bell was driving, but could find nothing wrong with them.